486 So.2d 760 (1986)
Alvin Joseph LeBOUEF
v.
COLONY INSURANCE COMPANY, Graystone Insurance Company, Barker Agency, Inc., and Southern Maritime Underwriters, Ltd.
No. 85-CW-1329.
Court of Appeal of Louisiana, First Circuit.
March 25, 1986.
Louis J. St. Martin, Houma, for plaintiff and appelleeAlvin J. LeBouef.
Thomas E. Loehn, New Orleans, for defendant and appellantBarker Agency, Inc.
Before EDWARDS, LANIER and PONDER[*], JJ.
EDWARDS, Judge.
Alleging that he was injured while working as a member of the crew on the M/V MR. DUPRE, plaintiff proceeded directly against his employer's insurers for damages. Named as defendants were Colony Insurance Company, the employer's primary insurer; Graystone Insurance Company, the excess insurer; and the Barker Agency, Inc., the employer's agent who had placed the insurance with Colony and Graystone.[1]
During discovery it became apparent that Graystone was a bogus company, existing only on paper. Consequently the employer had no excess coverage. Plaintiff settled his claim against Colony, released Colony and plaintiff's employer, and then attempted to pursue his claim against the Barker Agency, Inc., on the basis that the agent was negligent in placing the excess insurance with a nonexistent insurance company.
*761 Barker Agency, Inc., filed an exception of no cause of action urging that plaintiff, as the tort victim, has no cause of action against a negligent insurance agent because any such cause of action is personal to the insured.[2] The trial court overruled the exception. On the basis of Herlitz Construction Co. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981), we granted supervisory writs.
That the tort-feasor who was inadequately insured due to the negligence of his insurance agent has an action against that agent is not disputed. The issue in this case, however, is whether the tort victim has a right of action against the insurance agent. We hold that he does not. Although this circuit has not heretofore addressed this issue, the second and fourth circuits have, and they have arrived at opposite conclusions.
In Campbell v. ContinentialEMSCO Co., 445 So.2d 70 (La.App.2d Cir.), cert. denied, 446 So.2d 1223 (La.1984), plaintiffs sought to recover from the tort-feasor's insurance agent because it had procured a liability policy which excluded coverage for the particular accident which had killed plaintiffs' decedent. Basing its conclusion on a duty/risk analysis, the court held that the agent's duty to use due care in procuring insurance for its client did not extend to encompass the risk of harm to the plaintiff. Id. at 72. The Campbell court expressly disagreed with Sturcke v. Clark, 261 So.2d 717 (La.App. 4th Cir.) (on reh'g) cert. denied, 262 La.308, 309, 263 So.2d 46, 47 (La.1972), in which the fourth circuit concluded that because an insurance contract is for the benefit of a third party, and indeed may be enforced directly by that third party, see LSA-R.S. 22:655, the insurance agent's "obligation to provide a contract for the benefit of a third party is itself an obligation for the benefit of a third party." Sturke, 261 So.2d at 720.[3]
The rule that all liability policies are executed for the benefit of the victims is found in the direct action statute, LSA-R.S. 22:655, and it must be considered in that context. Before the enactment of the direct action statute, many liability policies were for indemnity only, and contained "no action" clauses, by which insurers were only obligated to pay for losses actually paid by the insured. Thus if the insured became insolvent and never paid the injured party, the insurer's obligation to pay never arose. Consequently the victim was left with only a worthless judgment; despite the fact that the tort-feasor was insured, the victim was unable to recover. Webb v. Zurich Insurance Co., 205 So.2d 398, 402 (La.1967); Comment, Direct ActionsInsurance Contracts, 13 La.L.Rev. 495, 496-97 (1953).
The direct action statute recognized that the insurance was for the benefit of those injured, and removed the then existing obstacles to the victim's recovery. By enunciating a policy that insurance contracts are stipulations in favor of victims, the legislature created the legal foundation upon which direct actions could be based.
We, however, decline to extend this policy to say that the tort-feasor's insurance agent owes a duty to the tort victim to secure insurance. That the third party's benefit is limited to the policy itself is made clear by the statement "that all liability policies within their terms and limits are executed for the benefit of all injured persons." LSA-R.S. 22:655 (emphasis added). Accordingly we cannot agree with the fourth circuit that section 655 gives a tort victim a right of action against a negligent insurance agent for failure to procure proper coverage for his client, the tort-feasor. An insurance agent's duty to procure proper insurance coverage arises from his agreement with his client. The agent has no obligation to *762 the victim, either contractually or legally, to procure proper insurance coverage for the tort-feasor. Consequently the failure of the agent to fulfill this obligation does not give the victim a right of action against him.[4]
Having found that the plaintiff has no right of action against the tort-feasor's insurance agent, we reverse the trial court judgment. Plaintiff's action against Barker Agency, Inc., is dismissed, and plaintiff is cast for all costs.
REVERSED AND RENDERED.
LANIER, J., concurs in the result. The trial court properly treated the pleading as a peremptory exception pleading the objection of no cause of action. The majority's statement that the proper objection is no right of action is wrong.
NOTES
[*] Judge Elven E. Ponder, retired, appointed to hear appeals vice Judge John S. Covington, temporarily assigned to the Twenty-Fifth Judicial District Court.
[1] Plaintiff's claim against another insurance agent is not before us.
[2] We note that the proper objection is no right of action, which may be noticed by this court on its own motion. See LSA-C.C.P. art. 927.
[3] Although in Sturke, it was actually plaintiff's UM carrier who recovered from the negligent agent, the recovery was based on the tort victim's right to recover, to which the UM carrier was subrogated.
[4] Of course plaintiff, at least theoretically, has another avenue of recovery, that is, he may sue his employer directly and thereby recover the amount of his damages above the insurance policy limits.